Sewall, J.
This is an action upon a policy of insurance, dated and made November 3d, 1807, whereby the defendants assured for the plaintiffs 10,000 dollars on merchandise on board the ship Meridian. The dispute more immediately referred to the decision of the Court, upon a state of facts agreed between the parties, respects the sum recoverable upon the policy. The defendants contend that the interest of the plaintiffs in the risk insured had been so far covered hy a policy j. rior in date, that the [ * 214 ] sum *of 10,000 dollars, added to the sum assured in the former policy, exceeded the amount of their property in merchandise on board the ship Meridian.
The policy, executed by the defendants, upon which this action is brought, contains the following clause: “ And it is hereby agreed that if the said assured shall have made any other assurance upon the premises aforesaid prior in date to this policy, then the said insurance company shall be answerable only for so much as the amount of such prior assurance may be deficient towards fully coy *175 ering the premises hereby assured ; and the said insurance company shall return the premium upon so much of the sum by them assured, as they shall be, by such prior assurance, exonerated from.”
And by the state of facts it appears, that the plaintiffs, together with Charles G. Cabot, and several others, shippers of merchandise on board the ship Meridian, effected an insurance thereon, for their joint account, by a policy dated October 31, 1807, and proposed for the sum of 40,000 dollars, but finally closed at the sum of 32,000 dollars, after several subscriptions by individuals, underwriters to that amount.
The plaintiff's contend that the actual subscriptions upon this joint policy did not exceed, at the time their separate policy was effected, the amount of 10,000 dollars; and so it is to be understood in deciding this case, if it is competent to the plaintiffs to give evidence of the facts, notwithstanding the written date of the joint policy; and they contend, further, that no over-insurance appears in the case, because the assured in the joint policy are at liberty to apportion the sum insured thereby among themselves.
The whole amount of merchandise on board the Meridian belonging to the plaintiffs and the other shippers assured by the joint policy, was 42,000 dollars, of which the distinct shares of the plaintiffs amounted to 27,885 dollars. It is obvious, therefore, that the sum insured by the two * policies, [ * 215 J applied at large to the benefit of those whom they may concern, does not exceed the amount of the risk insured. The objection now to be considered is made, however, against those who were assured by the separate policy; and their distinct interest in the joint policy is, therefore, to be ascertained. What is to be considered the amount of the joint policy at the time the separate insurance was made, is the other question arising upon the facts stated.
The defendants contend that the interest of the plaintiffs in the joint policy must be taken, and estimated, in the exact proportion of their shares in the adventure insured ; there being no special agreement proved, to show any other appointment among the concerned. And it is argued that a question of over-insurance made by the underwriters upon a subsequent policy, gives them a sort of interest in the prior policy, and an authority to control those who are insured by it in the application of their insurance.
The questions and difficulties apprehended in the case at bar, arise altogether from certain alterations recently made in the forms of policies of insurance within this state. It may be useful, therefore, on this occasion, and especially on determining the effect of *176 the novel stipulations cited from the policy in question, to have some recourse to the forms in use with us prior to these alterations.
The first in place upon the instrument is the precise naming of the assured, and the restriction of the policy to the party named. Formerly, with us, policies of insurance, in their most usual form, after naming the assured, or the party effecting the insurance, ran to him as well in his own name “ as for and in the name and names of all and every other person or persons, to whom the same doth, may, or shall appertain.” And this latitude of expression had its conveniences. A set and mechanical form of words, comprehending well enough the party or parties authorizing an insurance, and concerned therein, through all the various combinations [ * 216 ] of interest which may be lawfully insured, * removed, in some degree, the danger of mistakes, arising from the misapprehension or inadvertence of brokers and parties; and the contract was less liable, either to a defence against a loss, or a reclamation of premium, which may now be made not only on a supposed defect of insurable interest, but an unsuitable or defective naming of the party or parties requiring the insurance.
This new precision may be requisite, and seems to be in part directed, to the purpose of enforcing the other alteration alluded to; that is, the stipulation providing for cases of over-insurance. These have been cited, and need not be repeated ; they are by no means peculiar to the policy now in question, but are so much in use, as to have become, with a little variety of shape, a part of all our printed forms. Their more general effect is to abolish the contributions among insurers, formerly employed as the most equitable and convenient methods of distributing the savings upon losses, and the charges for return premiums, in cases where an over-insurance was discovered. And the benefit to insurers, which seems to be expected from them, is that, in the event of a loss, the failure of a bankrupt insurer may be fixed upon the assured ; and to that extent he loses the indemnity intended to be secured to him, his right to it not being taken away by any legal principle, but only by his express stipulation.
Apart from this, and by the forms of insurance used before these stipulations were introduced, underwriters depended on the general principle of law, that an insurance is a contract of indemnity; and, therefore, without a risk of property there is no lawful insurance, and to recover a loss the assured is holden to prove an interest in the risk insured. What is an insurable interest, has been always a question of some difficulty. Hence the advantage of a general form, in naming the assured, and extending the effects of the insurance, as far as the contract may be found to have been author *177 ized by mercantile usages; thus comprising the cases of consignees, factors, * trustees, and agents, and persons [*217] having a qualified interest in the property insured. And courts of law have been liberal in the construction of policies in this respect, to the purpose of giving effect to the contract, whenever it might be done, without opening a door to wager policies and gaming insurances.
If the stipulations, cited from the policy in question, are referable to the same general purpose, and are to be restricted in their operation to the mode of adjustment provided among the underwriters concerned in one or more policies, their supposed interest or authority to control the assured in the application of their insurance, is inadmissible. The inquiry still is, as it was before the forms of insurance were altered, Is there proof of an over-insurance ? And although the surplus, when found, is no longer a saving to be averaged among all the underwriters concerned, but avails to the last underwriters in the order of time exclusively, yet the fact of an over-insurance depends upon the same principles.
In the case at bar, two policies — the joint and the separate policy — are before us. Taken together, the sums insured upon the same risk, described alike in both instruments, do not exceed the full amount and value of the interest and property of the parties in sured, who are named in the two policies ; all of them in one, two only of the concerned in the other. A right in the assured to appropriate their insurance among themselves, puts an end to the questions raised in the case at bar; and that they have this right, when not restricted by any circumstance in their mode of insurance, or any declared intention, or previous agreement among themselves, and to the extent requisite to give validity to both contracts, I can have no doubt; and this even after a loss is known. (4)
There are, however, in the case at bar, circumstances to be considered, which have a strong tendency to show an appropriation by the concerned, made and understood when the insurances were effected. All the concerned in the adventure ■* to be insured were parties to the proposal, in the joint [ * 218 ] policy of insuring to the amount of 40,000 dollars : then the separate policy was commenced, and after that was effected, the joint policy was closed at 32,000 dollars. It must be understood, therefore, upon these facts, that the insurance effected by the two policies was appropriated in some manner consistent with the validity of both contracts ; and the most obvious appropriation ia one that effectuates the declared intentions of all the concerned; *178 that is, by considering the joint policy as availing to those not separately assured, to the extent of their shares in the original proposal; and to those separately insured, for the balance of the 32,000 dollars. This, I apprehend, would be the result of the same evidence, nothing more being proved, in a controversy among themselves, if any should arise, respecting the expense of the premium, or the distribution of the avails upon the joint policy. And this evidence is at least sufficient to change the burden of proof, and to make it incumbent upon the defendant, to prove some other appropriation, such a one as would give to the insurance demanded of them the effect of an insurance without interest.
Any further inquiry as to this fact becomes unnecessary, when we consider the other question arising in the case at bar. What amount had been insured upon the joint policy when the separate policy was effected ? If a greater amount than 10,000 dollars had not been then subscribed, the defence fails in the other view which has been taken of it. The defendants suppose this question determined by the written date of the joint policy, and by the words cited from the policy in the case at bar, particularly the reference to a policy prior in date. The plaintiffs contend that this reference is, constructively, to a policy prior in effect, of which the written date is only the presumptive evidence, liable to be controlled by other evidence, when it can be had, of the actual subscriptions of each underwriter.
[ * 819 ] * The general principle is, that every subscription is a
new contract. Marshall [page 241] states this in speaking of the importance of the true date, when necessary to compare it with the dates of facts connected with the transaction; and, in this view of the subject, he commends the practice in England, where each underwriter dates his own subscription. By the true date, in contradistinction to some other date, he must intend the time of the transaction, as distinguished from any date which may be affixed to the writing containing the contract: and, because this last is presumptively the time of the transaction, although liable to be controlled when it is not truly so, he commends the practice which avoids a general date, and gives to each contract, made by every distinct subscription, its true date.
The rules of law, as applied in construing the dates of other instruments, even the most solemn, such as deeds and writings under seal, certainly are, that the written date is not conclusive evidence of the time of the transaction. This, when controverted and material, may be proved by extraneous evidence, notwithstanding a written date. A deed, and without doubt a policy of insurance, executed without any written date, are nevertheless valid ; and the *179 .•alter may happen to be a policy of a prior date, within the meaning of the stipulation cited ; that is, an insurance by a prior transaction.
This construction seems indispensable in another view of the facts stated. The joint policy also contains a stipulation respecting over-insurances, where every ambiguity arising from the use of the word date, has been avoided. It is an express condition of the joint policy, that the subscribers shall be discharged, in case the same property shall be wholly assured by any policy actually prior, &c.; or, if the sum assured by this policy should exceed the true value of the property at risk, then the first subscriber, and the next in succession, shall be held, &c., until the real amount, &c., shall be fully assured; and the subsequent subscribers * shall be discharged. By the effect, therefore, of the [ * 220 J separate policy, and as to those concerned in it, if actually effected prior to the latter part of the subscriptions upon the joint policy, all those subscriptions are discharged; and then it is not an insurance, as it respects the question to be decided, to the amount finally subscribed, but to the amount only of the subscriptions actually prior to the effecting of the joint policy.
And, upon the whole, the construction contended for by the plaintiffs is enforced by recurring again to the general purpose of these stipulations; which are only to be considered as providing a particular mode of adjustment for the case of an over-insurance, when it happens in one or more policies, but not otherwise con trolling the assured, or operating by any construction to produce the event.
The evidence offered of a usage applicable to these stipulations is entirely inconclusive. The case has never happened, or no attention was paid to the effect of them in the adjustments testified by some of the witnesses.
It is the opinion of the Court that the plaintiffs are entitled to recover as for a total loss; and judgment must be entered accordingly. (5)

 Kewley & Al. vs Ryan, 2 H. Black. 343.

 [Pacific Ins. Co. vs. Catlett, 1 Wend. 75. — Pridge. vs. Niagara Ins. Co., 1 Hall, 217. — Foster & Al. vs. U. S. Ins. Co., 11 Pick. 85. — Ed.]