## OTTO DRESEL & others *vs.* EBEN D. JORDAN.

If a married woman makes a written contract in her own name and her husband's, with a third party, for the sale and conveyance to him of land owned in part by her in her own right and in part by her husband, their joint execution of the deed of the land to the purchaser, before any indication of his intent to repudiate the contract, is a sufficient assent of the husband to the sale of her part of the land, and ratification by him of the contract for the sale of his part, to enable them to enforce specific performance, without evidence of her original authority to enter into the contract in his behalf.

A contract of executors, not in pursuance of their official duty, to sell and convey, with a clear and satisfactory title, land of the testator's estate, the title to which is in the heir subject to payment of the testator's debts and legacies and the charges of administration, is not necessarily void, but binds them individually; and if the terms of the contract imply that the title is to come from more than one source and may require more than one deed of conveyance, and the executors sell the land under license of the probate court, and then, to pass the title, tender to the other party a quitclaim deed of it from the purchaser at the sale, with a warranty deed from the heir, such party cannot avoid the contract, either on the ground of its original execution by the executors in their official name, or on the ground of his dissatisfaction with the form of their making title in its fulfilment.

For a vendor to enforce specific performance of the contract of sale, it is not essential that when he made the contract he should have had such title and capacity to convey the property, or such means and right to acquire them, as would have enabled him to fulfil it on his part, but is sufficient if he is able to convey the property when by the terms of the contract or the equities of the case he is required to do so in order to entitle himself to the consideration; and if time is not of the essence of the contract, nor made essential by an offer to fulfil by the purchaser and his request for a conveyance, the vendor will be allowed reasonable time and opportunity to obtain or perfect title.

The mere fact that the date of a deed in the chain of title to land is subsequent to the date of its acknowledgment will not justify a refusal to take a conveyance of the land on the ground that the title is not clear and satisfactory.

Dresel *v.* Jordan.

An agreement to convey land subject to an existing mortgage, the amount of which is to be assumed by the grantee in part payment of the consideration for the conveyance, is not satisfied by conveying the land subject to a condition that the grantee shall pay the mortgage debt and save the grantor harmless and indemnified in respect to it; but a waiver of any objection to accept the conveyance in this form may be inferred from acts of the grantee.

BILL IN EQUITY filed October 16, 1869, by Otto Dresel, Anna L. Dresel, his wife, and Wendell Phillips and Caleb W. Loring, the latter two as executors and trustees under the will of Louisa Loring, mother of said Anna, to enforce specific performance by the defendant of the following written agreement:

" This agreement witnesseth that Otto Dresel and Anna L. Dresel, his wife, and Wendell Phillips and Caleb W. Loring, trustees and executors under the will of Louisa Loring, of the first part, agree to sell, and Eben D. Jordan, of the second part, agrees to buy, the dwelling-house numbered 76 Chestnut Street in Boston, together with the land belonging thereto, [here followed a description of the premises by metes and bounds,] being the same premises conveyed in a deed from Edward Cabot, dated September 12, 1866, and registered with Suffolk deeds, lib. 884, fol. 260, and from George Higginson, lib. 887, fol. 12, for the sum of $22,000, payment to be made in the following manner: to wit, the said Jordan to assume the note of George Higginson, secured by a mortgage on the premises, for the sum of $10,000, made September 12, 1866, to run for three years, with interest at six per cent. per annum, and to pay the balance, that is, $12,000, in cash, on the day possession of the premises is given. Possession to be given, and the papers to be passed, on or about May 20 now next ensuing. Ten days to be allowed for examination of the title; and a clear and satisfactory title to be given, or the within agreement to be null and void.

" Made at Boston this 21st day of April, A. D. 1869.

> " Anna L. Dresel.
> " Otto Dresel, by A. L. D.
> " Wendell Phillips, ⎞ Ex'rs under will
> " C. W. Loring,   ⎠ of Louisa Loring.
> " E. D. Jordan."

The following facts appeared by the bill, answer and evidence, on which the case was reserved by the chief justice for the determination of the full court:

Edward Cabot, being seised of the premises in question, by his deed bearing date of September 12, 1866, referred to in the agreement, conveyed them to George Higginson for the consideration of $20,000. The certificate of the acknowledgment of this deed by Cabot bore date of September 5, 1866, and attested that he acknowledged the deed on that day. Higginson, on September 12, 1866, after this conveyance, mortgaged the premises back to Cabot to secure payment of $10,000 of the purchase money in three years from that date, and on October 8, 1866, conveyed them to Louisa Loring (who was a widow) and the plaintiff Anna L. Dresel, on condition that he should be saved harmless from the payment of this mortgage. On October 31, 1866, Louisa Loring and Anna L. Dresel conveyed an undivided third part of the premises to a third person, who on the same day conveyed the same to the plaintiff Otto Dresel. Louisa Loring died in 1868, leaving a will which was proved October 31, 1868, and of which the plaintiffs Phillips and Loring were on that day appointed executors. In this will, after giving certain legacies, she gave all the residue of her estate to Mrs. Dresel.

On April 21, 1869, (the date of the agreement in question,) subject to the condition in the deed from Higginson, Otto Dresel and Mrs. Dresel were thus each seised of an undivided third part of the premises, and Mrs. Dresel, as residuary devisee under her mother's will, of the other third, subject to payment of the debts, legacies and charges of administering the estate of the deceased. Otto Dresel was then absent in Europe, and Mrs. Dresel was living on the premises. The agreement was signed by all the parties, on that date, except that the name of Otto Dresel was subscribed by Mrs. Dresel, as indicated in the copy of it above set forth. It was the result of negotiations conducted with the defendant by James F. Curtis, a broker, who was employed by John G. King to sell the premises. Curtis was a witness for the plaintiffs, and on cross-examination, in

reply to a question " Whom did King represent in this matter if you know ? " he testified : " King represented Mrs. Dresel and Mr. Dresel, or perhaps I had better say he represented the owners of the estate, as they all wanted to sell."

It appeared by the plaintiff Loring's testimony, that, immediately after the execution of the agreement, he, having been advised that Benjamin F. Brooks and Joshua D. Ball, attorneys, would act for the defendant in examining the title, called upon Brooks and informed him that the premises were owned, one third by Mr. Dresel, one third by Mrs. Dresel in her own right, and one third by her as residuary devisee under her mother's will and subject to a lien for the debts of the testatrix ; and proposed to give, in fulfilment of the agreement, a warranty deed by Mr. and Mrs. Dresel of the whole premises ; but Brooks declined to regard such a deed as a satisfactory conveyance of them, and said that Loring " had better proceed in a legal manner." Thereupon Loring prepared a warranty deed of two thirds of the premises, to be executed by Mr. and Mrs. Dresel, which was expressed that the premises were " conveyed subject to a mortgage to Edward Cabot for $10,000," describing the Higginson mortgage, " which said principal sum, with the interest due and to grow due thereon, is to be assumed and paid by said grantee and his representatives as his own debt, the same forming part of the consideration above expressed, and this deed is upon the condition that said Jordan shall pay said principal and interest of said mortgage debt, and our heirs, executors and administrators shall be forever indemnified and saved harmless from payment of said principal and interest and every part thereof ; " and concerning the deed thus prepared by him he testified as follows : " I took it to Brooks. He examined it in my presence. He objected to the condition as to the payment of the mortgage. I informed him that Mr. and Mrs. Dresel and Mrs. Loring had taken the estate on the same condition, and we should have to follow the previous grant. I went to my office, and procured the deed from Higginson to Mrs. Loring and Mrs. Dresel, and took it to Brooks. Brooks would not examine it then ; but said he would do so and inform me. I waited about

two days — more than one; and, not hearing from Brooks, and being in a hurry to get the deed to Mr. Dresel, I again called on Brooks. He gave me both the deeds, and said that he saw it was necessary to have the condition in our deed. I immediately sent or caused to be sent the deed to Mr. Dresel, who was then in Germany. Before sending it, I had it signed and acknowledged by Mrs. Dresel. About May 20 Jordan took possession of the house; and about May 27 Mrs. Dresel went to Europe. On May 31, I received Mr. Dresel's deed from Europe. I called the same day on Brooks, showed it to him, and offered to leave it with him."

Loring further testified: "Before this time, I had applied to the probate court for leave to sell the one third of the estate formerly belonging to Mrs. Loring, for the payment of legacies. I obtained such leave, and advertised it to be sold at auction on the premises on June 18. On June 17 I called at the office of Brooks & Ball, and saw them both together, notified them of the auction sale on the following day, and asked them if I should have the estate bid off in the name of Jordan. They did not authorize me to have it done so, and I informed them that I should have it bid off by another person, and would have him make a deed to Jordan." "I employed auctioneers to sell the estate under the order of the probate court, on June 18. As attorney for Mrs. Dresel, I directed Charles C. Cram to attend the auction sale, and bid for it one third of the price that Jordan was to pay for the premises, and, if any outsider should interfere, which I did not anticipate, to bid it in at any price, or to bid it off at any price. A deed was made out to Cram, in conformity to the sale, and a deed from Cram to Jordan, of date of June 18. On June 25, I called on Jordan, and tendered him the deeds of Dresel and wife, Phillips and Loring to Cram, and Cram to Jordan, and demanded payment of the consideration, the purchase money. I told Jordan that Brooks & Ball had not finished the examination of the title, but that I made this tender then, so that I should not be held in fault by any delay."

Copies of all the papers from the probate office, (including the record of the sale by auction, showing that Cram bid off

Mrs. Loring's undivided third of the estate for the sum of $7333.33,) and the deeds referred to by the witness Loring, were put in evidence by the plaintiffs. It appeared by Loring's testimony that the amount needful to be raised by the executors' sale, to pay debts, legacies and charges of administration, was about $1300. The deed of the executors to Cram, in pursuance of the sale, was subject to a condition for the payment of the Higginson mortgage; and the deed from Cram to Jordan was a quitclaim deed in the usual form, also subject to the same condition.

During the summer and the early part of September 1869, Loring held various other interviews with Brooks & Ball and Jordan; and still another formal tender of the deeds of Mr. and Mrs. Dresel and Cram to Jordan was made by Loring to Jordan during the month of August. At one of these interviews, on September 2, Loring offered to procure from Mr. and Mrs. Dresel a warranty deed of the third of the premises which was conveyed by Cram. On September 13, Jordan, through his attorneys, advised the plaintiffs that he did not consider that the title to the premises was satisfactory, and refused to accept the deeds and pay the purchase money; whereupon this suit was brought. The other material facts appear in the opinion.

*E. D. Sohier*, for the plaintiffs.

*B. F. Thomas*, for the defendant.

WELLS, J. The first question to be determined is, whether there is any contract such as to bind the defendant. The writing sets forth the terms of a complete agreement, and it is signed by the party sought to be charged therewith. It is not essential that the writing should bear the signatures of the other party. *Old Colony Railroad Co.* v. *Evans*, 6 Gray, 25. To make it obligatory upon one party, however, it is necessary that the other shall have accepted or assented to the terms of the agreement it contains.

Mrs. Dresel being a married woman, her subscription of her own and her husband's name to the writing is not alone a sufficient assent to make a legal agreement. There is no direct evidence of previous authority from her husband. The broker who

negotiated the sale, and drew up and procured the execution of the agreement, testifies that he " was recognized by the Dresels as their agent for the sale of the house." His employment, however, appears to have been effected through a third party, Mr. King, the nature and extent of whose authority does not appear. The deed of conveyance, prepared in fulfilment of this contract, on the part of the sellers, was executed by Otto Dresel May 14, 1869, before the defendant had completed his examination of the title, or given any indication of a purpose not to be held by his undertaking to purchase the property. This was a sufficient confirmation of the authority previously assumed by Mrs. Dresel in making the original agreement, both in respect to his share of the estate, and the share held by her in her own right. The decision in *Melley* v. *Casey,* 99 Mass. 241, applies to conveyances, not to executory agreements. The decision in *Townsley* v. *Chapin,* 12 Allen, 476, applies to agreements to be enforced against the wife; which must necessarily be in writing, in order to comply with the statute of frauds. But no writing being necessary on the part of the sellers, the purchaser cannot escape from the obligation of a contract signed by him, because of an attempted but ineffectual execution of the instrument by the sellers. *Hunter* v. *Giddings,* 97 Mass. 41.

The deed signed by Otto Dresel embraced only two thirds of the estate. For the purposes of this decision, therefore, we may consider that the title to the other third was derivable only through the executors of Mrs. Loring. They are parties to the agreement of sale, and to the present suit. An objection is made that such an agreement by executors is illegal and void. It is not in pursuance of their official duty, and is excusable only on the ground that it was done in the interest of the residuary devisee, and without danger of prejudice to the rights of creditors or legatees. As a contract, it binds them individually, not as executors. To fulfil it, they must, in effect, become purchasers of the estate. If there exist a legal cause for a sale, they can become purchasers, subject to the liability to be held as purchasing in trust for the heir, or other party having the ultimate interest. Their entering into this contract does not necessarily

involve any illegality of proceeding in their official character as executors, so as to render it void upon that ground. It is true that the contract, on their part, could not be enforced specifically; because the estate in which the title to the land stands is not bound by the agreement, and they cannot lawfully be restricted in the exercise of their official authority and duty by any such unofficial engagements. But they may be held liable in damages for the nonfulfilment of the contract.

This consideration leads to another objection urged by the defendant, namely, that there is a want of such mutuality as is requisite for an agreement entitled to specific enforcement. So far as this objection rests upon the ground that there was no legal and sufficient agreement on the part of the sellers, for any of the reasons already considered, no further discussion is necessary. Beyond that, the point of the objection is that the seller must have, at the time the agreement is made, such title and capacity to convey, or such means and right to acquire them, as will enable him to fulfil the contract on his part; otherwise the court will not hold the purchaser to a specific performance. But we do not so understand the rule. On the contrary, if the obligation of the contract be mutual, and the seller is able, in season to comply with its requirements on his part, to make good the title which he has undertaken to convey, we see no ground on which the purchaser ought to be permitted to excuse himself from its acceptance. The suggestion of such a rule in *Hurley* v. *Brown*, 98 Mass. 545, was foreign to the case there decided, and is not borne out by the authorities cited for it, namely, *Tendring* v. *London*, 2 Eq. Cas. Ab. 680, *Mortlock* v *Buller*, 10 Ves. 292, 315, and *Pipkin* v. *James*, 1 Humph. 325.

The case of *Pipkin* v. *James* was an action at law, to recover back the purchase money of " one ice-house and lot, $140," included in a bill of sale with articles of personal property. The grounds of action were two: 1st. " that the contract is void by the (operation of the) statute of frauds and perjuries;" 2d. " that the defendant had not, at the time of the sale, nor yet has, any title to the property sold." The action was sustained upon both grounds.

The case of *Tendring* v. *London* is referred to in 2 Eq. Cas. Ab., as supporting the doctrine for which it is cited in *Hurley* v. *Brown;* but as the case itself is not reported, and has never been published, we are unable to learn what was the real point adjudged. The reason assigned — to wit, " for every seller that will have such a bargain executed must be a *bonâ fide* contractor " — indicates that the rule intended to be established was much less strict than the statement for the support of which it is cited.

In *Mortlock* v. *Buller*, no such question was decided or raised. The reference on page 315 is to an apparent expression of dissatisfaction by Lord Chancellor Eldon with the contrary rule, in case " a person carries an estate to market, not having any title at the time." But he agrees that " it is much too late to discuss the question whether it would have been wholesome originally to have held that he should not have specific performance."

On the other hand, the same learned chancellor, in *Jenkins* v. *Hiles*, 6 Ves. 646, 655, remarks : " It is impossible to deny that, upon the old authorities, a specific performance might be obtained, if the title could be made good before the report. The court would execute the contract then, regard being had to the justice due to particular cases."

In the later case of *Coffin* v. *Cooper*, 14 Ves. 205, he held that, if the master report that the plaintiff will have good title upon getting in a term, procuring administration, &c., the court will put him under terms to procure that speedily ; and the motion of a defendant to be discharged, because the master reported that a good title could not then be made, was refused, the plaintiff having in the mean time obtained an act of parliament to enable him to perfect the title.

The equitable rule is established by numerous authorities, that where time is not of the essence of the contract, and is not made material by the offer to fulfil by the other party, and request for a conveyance, the seller will be allowed reasonable time and opportunity to perfect his title, however defective it may have been at the time of the agreement. And in all cases

it is sufficient for the seller, upon a contract made in good faith, if he is able to make the stipulated title at the time when, by the terms of his agreement or by the equities of the particular case, he is required to make the conveyance, in order to entitle himself to the consideration. *Boehm* v. *Wood*, 1 Jac. & Walk. 419. *Wynn* v. *Morgan*, 7 Ves. 202. *Hoggart* v. *Scott*, 1 Russ. & Myl. 293. *Salisbury* v. *Hatcher*, 2 Y. & Col. Ch. 54. *Dutch Church* v. *Mott*, 7 Paige, 77. *Baldwin* v. *Salter*, 8 Paige, 473. *Seymour* v. *Delaney*, 3 Cowen, 445. *Hepburn* v. *Dunlop*, 1 Wheat. 179. *Richmond* v. *Gray*, 3 Allen, 25, and cases cited. *Barnard* v. *Lee*, 97 Mass. 92. Story Eq. §§ 776, 777.

In the present case, although a fixed time was named in the contract for conveyance of the title, the defendant was himself at no time ready to receive it until after the plaintiffs had, by the sale to Cram, enabled themselves, by means of a quitclaim deed from Cram, to transfer the whole title. The plaintiffs were not therefore at any time in default, in respect to the title to this third part of the estate.

The defendant cannot fairly object to the receipt of one third of the title through a deed from Cram. The very form and terms of the agreement imply that the title is to come from more than one source, and may require more than one deed of conveyance. The conveyance to Cram under the executors' sale, and release from Cram to the defendant, are the legitimate means of carrying into effect the contract of the executors with the defendant. The sale to Cram was for an amount more than sufficient to satisfy all debts and legacies; and the executors are chargeable with the amount, whether they ever receive it or not. A delivery to the defendant of a deed from Cram, in performance of the agreement of sale, being complementary to the part execution thereof by Mr. and Mrs. Dresel, and necessary to render the fulfilment by them available, will forever preclude them from any attempt to avoid the executors' sale. Besides, there was an offer to confirm the title thus made, by procuring a warranty deed from Mr. and Mrs. Dresel for delivery on the 1st of December, to which time the defendant had requested that the business of completing the transfer should be postponed for his

convenience in making the payments. As Mrs. Dresel was sole heir or residuary devisee of Mrs. Loring, this proposition would have cured all objections, both to the execution of the contract by the executors and to the form of making title in its fulfilment.

The objection to the inconsistency between the date of the deed from Cabot to Higginson, and the date of the certificate of acknowledgment, is not sufficient to justify a refusal to take a conveyance of the property. A date is not essential to the instrument of conveyance. It takes effect from delivery. If a date be written in the deed, it is not conclusive, but may be controlled by other recitals in the deed, or by extrinsic facts or circumstances. *Lee* v. *Massachusetts Insurance Co.* 6 Mass. 208. *Harrison* v. *Trustees of Phillips Academy,* 12 Mass. 456, 463. *Jackson* v. *Schoonmaker,* 2 Johns. 230. The certificate of acknowledgment is presumed to be correct, and will not be controlled by the date inserted in the deed. Even if that date was inserted subsequently, and indicates the true time of delivery of the deed, the discrepancy does not render the deed invalid. The real date of a deed is the time of its delivery; which may be subsequent to its acknowledgment, and even after registration. *Hedge* v. *Drew,* 12 Pick. 141. *Parker* v. *Hill,* 8 Met. 447.

An objection of real importance to the title offered to be conveyed is, that the deeds, proposed to be given, subjected the estate to a condition for the payment of the Cabot mortgage and indemnity of the grantors; whereas the agreement provided only for a sale subject to the mortgage, which was to be assumed in part payment of the purchase money. The title derived from Higginson seems to have been impressed with the same conditional character. Although proceedings to enforce the condition, by way of forfeiture, may be stayed upon payment after breach, yet the qualities, imparted to the estate by such a condition, are essentially different from those which result from a mortgage assumed merely as an incumbrance. *Sanborn* v. *Woodman,* 5 Cush. 36. This objection is fatal to the plaintiffs, unless it has been waived by the conduct of the defendant *Park* v. *Johnson,* 7 Allen 378.

It appears from the testimony, that this fact in respect to the title was made known to the attorneys of the defendant very soon after the date of the agreement, and before the deed was sent abroad to be executed by Otto Dresel. Some objection was made to the condition; but after two days' consideration an answer was received which justified the plaintiffs' attorney in supposing that the objection would not be insisted on; and accordingly the deed was forwarded to Europe for signature, in the form in which it was submitted to the attorneys for the defendant. Mrs. Dresel vacated the house, and sold to the defendant the gas fixtures and portions of the furniture. The defendant proceeded in the further examination of the title, and did some acts looking to occupation; and when his purpose to retain the place for occupation was abandoned, he caused it to be advertised for sale. The plaintiffs' attorney having received the deed from Otto Dresel May 31, and notified the defendant's attorney thereof at once, objection was made on account of the date of the acknowledgment of the deed from Cabot to Higginson, and measures were taken to remove that objection. Various delays occurred, not by any fault of the plaintiffs, by which the conclusion of the business was postponed until the 1st or 2d of September; when the parties came together, and, to meet the defendant's convenience, arranged that $4000 only of the purchase money should be paid down, and $8000 remain until December 1, and that the title deeds should, in the mean time, be held by the plaintiffs' attorney, with proper security for their ultimate delivery upon payment of the balance of the purchase money. This arrangement, however, being made by the defendant's attorney, was subject to his determination upon an objection then for the first time made, and, as his attorney testifies, then for the first time known to him, namely, that the contract was signed, on the part of the sellers, by executors. No other objection was, at that time, made; and objection to the conditional clause, relating to the mortgage, had not been renewed since its first suggestion in April. On the 13th of September the objection raised in regard to the signature by the executors was insisted on. The defendant then refused to accept the conveyance and to complete the purchase.

Dresel *v.* Jordan.

It does not appear whether the condition would or could have been released, if that objection had been insisted on. But th defendant might have avoided a forfeiture by payment of the mortgage debt when due; and the plaintiffs, by taking up the mortgage, might have enabled themselves to discharge the condition. The mortgage note was to fall due on the 12th or 15th of September. The plaintiffs were themselves exposed to the risks of forfeiture if the defendant did not complete his purchase; and his delay from April till September, by leading them to rely upon him to pay the mortgage debt, as part of his purchase money, and to omit other provision for its payment, tended seriously to embarrass them in the protection of their interest in the estate against such forfeiture.

The objection is not one which affects the value or cost of the estate, or the completeness of the title which the purchaser will acquire upon full performance of the terms of his agreement. It is a contingent liability; or, rather, a more peremptory and harsh security for payment of a portion of the purchase money, than was contemplated by the terms of the agreement. The conduct of the defendant, as above narrated, constitutes a clear and decisive answer to the objection as taken by way of defence to this suit. It is a waiver of the objection. *Gerrish* v. *Norris,* 9 Cush. 167. *Salisbury* v. *Hatcher,* 2 Y. & Col. Ch. 54. *McMurray* v. *Spicer,* Law Rep. 5 Eq. 527, 542.

In the opinion of the court, none of the objections made by the defendant to the contract, or to the title offered to be conveyed, ought to avail him in defence. The plaintiffs are therefore entitled to a *Decree for specific performance.*