## White v. The Concord Railroad.

The act of 1850, (ch. 593, § 5,) provides that every railroad corporation in this State shall make and maintain all necessary cattle guards, cattle passes, and farm crossings, for the convenience and safety of the land owners along the side of the road, *provided* that the provisions of the section should not apply in any case where the corporation should settle with the land owner in relation to such guards, passes and farm crossings—*held*, that where a railroad divides the pasture of a land owner, and a crossing is made by the corporation according to the act, the land owner may let his cattle run in the pasture without a herdsman; and that the corporation will be liable for their destruction while crossing the track from one pasture to the other, unless it appear that the injury was caused by accident, or by the fault of the owner; or unless it be shown that the corporation has settled with the land owner in relation to such guards, passes and farm crossings.

Where the plaintiff gave a railroad corporation a deed of part of the railroad which contained this clause : " Said corporation to fence the land and prepare a crossing with cattle guards at the present travelled path, on a level with the track ;" and it appeared that the railroad divided the plaintiff's pasture into two, in one of which there was no water, and that the crossing connected the two—*held*, that the clause in the deed was not a settlement between the parties, in relation to the crossings required by law, and that the legal position of the parties was not changed thereby. *Held, also,* that where the plaintiff turned his cattle loose into one of the pastures, and they were subsequently killed in attempting to cross the track, the defendants were liable for the damage, unless it should appear that it was done by accident, or by some fault of the plaintiff.

Where by law the animals of a party are rightfully upon a crossing on a railroad, and are killed by the engines of the corporation, gross negligence need not be shown in order to sustain an action for the injury.

Ordinary care and diligence do not require that a land owner, who has the right to have his cattle run from one pasture to another, that is divided by a railroad, over a crossing that is made by the road, should keep a " look out " at the crossing, or an attendant to watch the cattle.

If the cattle of a land owner, being rightfully on a railroad crossing, are killed by the engines of the corporation, their destruction is *prima facie* evidence of negligence, and the burden is thrown upon the corporation to show that the injury was occasioned without any fault on their part.

In fixing the value of property, it is competent for a witness to testify to actual sales of similar property in the vicinity of that in question.

After verdict, if enough appears upon the declaration to show that the plaintiff has a good cause of action, all defects will be regarded as cured by the finding of the jury.

White *v.* The Concord Railroad.

CASE, for negligently killing a colt and a cow, by means of the defendant's engines and cars. Plea, the general issue.

The declaration contained two counts, the first of which was as follows :

" In a plea of trespass on the case, for that on the 24th day of June, A. D. 1852, at said Bow, the plaintiff was possessed and the owner of a certain three years old sorrel colored colt, of the value of one hundred and fifty dollars, which colt was then and there passing over and across the railroad of said defendants, in said Bow, from the plaintiff's land, on one side of said railroad, to the plaintiff's land on the other side of said railroad, in said Bow, through and along an open crossing, prepared by the defendants for the purpose of enabling the horses and cattle of the plaintiff, and all others occupying the said lands on both sides of said railroad, to pass from one side of said railroad to the other through and along the same, and the engine and cars of the defendants, of which certain servants of the defendants had the care, government and direction, were at the same time then and there passing along said railroad at the point of its intersection by said open crossing ; and the plaintiff avers that said defendants, then and there, not minding or regarding their duty in this behalf, by their said servants, so negligently and unskilfully managed and behaved themselves in this behalf, and so ignorantly, carelessly and negligently drove and managed, guided and governed said engine and cars, that the said engine and cars of said defendants, for want of good and sufficient care and management thereof, then and there struck against the said colt of the plaintiff with such force and violence that the said colt of the plaintiff was thereby killed and rendered entirely worthless, whereby the plaintiff entirely lost his said colt and all use and benefit therefrom, and was subjected to the expense of two dollars for removing and burying the same."

The second count was similar to the first, being for the killing of the cow, on the 26th day of June, 1852.

The following facts appeared upon the trial.

On the 10th day of February, 1849, the plaintiff gave the corporation a deed of a part of the railroad containing this clause :—" Said corporation to fence the land and prepare a crossing with cattle guards, at the present travelled path, on a level with the track." A crossing had there been prepared with cattle guards, upon a level with the track, and it continued unchanged up to the time of the injury. The corporation, at one time, put up gates at the crossing, but, in consequence of the plaintiff's objection to them, they were taken away before the date of the deed, and were not put up afterwards, because the plaintiff continued to insist upon an open crossing. The engines run against the colt and cow at this crossing, and killed them. It did not appear how the colt or the cow came to be at the crossing, at the time of the injury, except what might be inferred from the fact that the railroad divided the plaintiff's pasture, in which they were kept, into two nearly equal parts, leaving the river upon one side of the crossing, and no water in the pasture upon the other side, in the summer season.

There was testimony in respect to the condition of the track and as to the manner in which the defendants were running their train at the time the colt was killed, but no exception was taken to it in point of law.

Upon these facts, (which were undisputed,) the defendants' counsel requested the court to instruct the jury that the defendants were not liable except for gross negligence, but the court declined so to charge. The plaintiff's evidence in respect to the injury to the cow was, that immediately after the passing of the defendants' freight train, on the 26th of June, 1852, she was found at the side of the track in a dying state, and appeared to have been struck by the engine. The defendants introduced no evidence to explain the occurrence. The court instructed the jury that, in the absence of any explanation, it should be presumed that the injury was not

White *v.* The Concord Railroad.

accidental, but was either wilful or the result of careless-ness; that the defendants would not be answerable for a wilful injury by their servants, but were answerable for neg-ligence in their servants the same as if it were their own.

As tending to prove the value of the colt, the court per-mitted the plaintiff to prove the price for which another colt of the same age, and sired by the same horse, (but not so good as his colt,) was sold in the vicinity the spring before the loss.

The jury returned a verdict for the plaintiff upon both counts, appraising the damages for the colt in the sum of $143, and for the cow $35,48.

The defendants moved to set the verdict aside, because of said ruling and instructions.

*George & Foster*, for the defendants.

By the Revised Statutes, chapter 142, section 6, railroad corporations are made liable in damages for neglect to keep a sufficient and lawful fence on each side of their road, un-less they shall have settled with and paid the adjoining land owner for building and maintaining such fence. The construction and meaning of this statute is considered in *Dean* v. *Sullivan Railroad Company*, 2 Foster's Rep. 316.

And the eleventh section of the charter of the defendant corporation provides that " if said railroad in the course thereof shall intersect or cross any private way, the said cor-poration shall so construct said railroad as not to obstruct the safe and convenient use of such private way."

But the obligations imposed upon the defendants, by the Revised Statutes and the charter, are duties to the adjoin-ing land owner only, and may be omitted or shifted to the other party by his consent; much more, then, by his ex-pressed desire and stipulation. *Jackson* v. *Rutland and Bur-lington Railroad Co.*, Vt. Sup. Court, Feb. 1853, not yet officially reported; *Towns* v. *Cheshire Railroad Co.*, 1 Fos-ter's Rep. 363 ; *Dean* v. *Sullivan Railroad Co.*, before cited.

The defendants are the owners of their railroad track.

The deed of that portion which they purchased of the plaintiff contains this clause:—" Said corporation to fence the land and prepare a crossing with cattle guards, at the present travelled path, *on a level with the track.*"

The section of the defendants' charter, already cited, contains, also, the following provision, evidently inserted for the benefit of the corporation:—" Said corporation shall have power to raise or lower such turnpike, highway or private way, [that is, any such way which the railroad may intersect or cross] so that the said railroad, if necessary, may conveniently pass under or over the same."

The plaintiff insisted upon an *open* crossing; and at his special instance the gates, which the defendants had placed at the ends of the crossing, were removed.

I.  We say, then, that by the stipulation in the plaintiff's deed, and his agreement with the other party concerning the gates, the reciprocal obligations arising from the statute and the charter, were waived by the respective parties, as they might lawfully be ; that, as to the plaintiff, the manner of the defence of this crossing (or the absence of any defence,) was matter of contract between him and the defendants ; and that the stipulation in the deed, coupled with the plaintiff's refusal to have any gates at the ends of the crossing, amounts to an assumption by the plaintiff of the risk of injury to his animals that might, by means of such open crossing, get upon the railroad track.   The plaintiff, having assumed such risk, the defendants are not liable in damages for injuries to the plaintiff's animals at the crossing, provided the defendants use ordinary care and diligence in the management of their engines and cars at the place of crossing.

Under the agreement between the parties, the defendants could not guard the crossing by means of gates; the plaintiff might.   His neglect and refusal to do so was worse than negligent, it was reckless ; and the plaintiff being in fault, the defendants are liable only for gross negligence.

Under the circumstances, he was bound to keep the cattle

on his own land, at his peril.   *Towns* v. *Cheshire Railroad,* 1 Foster's Rep. 366; *New York and Erie Railroad Co.* v. *Skinner,* 1 Am. Law Register 97 ; *Railroad Co.* v. *Seiser,* 8 Barr 366 ; 9 U. S. Dig. 383, 384, Nos. 5 and 6.

II.   The declaration charges negligence on the part of the defendants, in the running and management of their trains, at the time of the several accidents complained of. This is an affirmative, material allegation and must be proved, in order to entitle the plaintiff to a verdict.

But the court instructed the jury " that, in the absence of any explanation, it should be presumed that the injury was not accidental, but was either wilful or the result of carelessness."

This instruction is opposed to the legal maxim—that nothing wrong is to be *presumed ;* neither crime, error, carelessness, nor negligence.   Every thing is to be presumed to have been legally and properly done, every engagement and duty performed, until the contrary is shown.   Cowen & Hill's Notes to 2 Phil. Ev. 296, and cases there cited.   The authorities, with reference to this legal principle, (selected from cases analogous to the present,) are numerous.   In *Vaudegrift* v. *Rediker,* 2 N. J. Rep. 185, which was an action against the defendant, for wilfully running against a cow with the engine and cars under his care, the cow had strayed upon the track without the plaintiff's knowledge.   The court say :  " We cannot presume that a careful man, charged as was the defendant, with the safety of the numerous passengers in the train, would have perilled their lives by wilfully running against a cow previously seen.   The only circumstance which can give the least color to such a charge, is that the line of road, at the point where the accident occurred, could have been seen by the engineer, from the distance of one fourth of a mile, perhaps further.   But the train was in rapid motion.   The exigences of the business to which railroads are at this day applied, require as much speed as is consistent with safety.   The cow, alarmed by

the approach of the engine, may at the moment, have darted on the road, so that the view of the danger by the engineer and the collision, may have been almost simultaneous. We cannot, therefore, infer such gross negligence as will make the defendant liable."

*Aldrich* v. *The Great Western Railway Co.*, M. & G. 518, was an action on the case against a railway company for so carelessly and improperly managing and directing an engine on their railway, by their servants, that sparks flew from the engine upon a stack of beans, standing in an adjoining field belonging to the plaintiff, whereby the stack was destroyed. A case stated for the opinion of the court, under the statute, alleged that the engines used upon the railway were such as were usually employed on railways, for the purpose of propelling trains and carriages thereon; and that the engine from which the sparks flew that set fire to the stack in question, was used at the time in the ordinary manner, and for purposes authorized by the act of parliament incorporating the company.

*Held*, that the facts stated were not sufficient to enable the court to infer negligence on the part of the defendants.

*Galena and Chicago Union Railroad Co.* v. *Loomis*, 13 Ill. Rep. 548, decided in 1852, was an action on the case to recover damages alleged to have been sustained by the plaintiff, in consequence of the careless and improper management, by the defendants, of their railroad cars and locomotive engine.

It appeared from the evidence that the defendants failed to ring a bell or sound a whistle, as the train of cars approached the crossing, as required by law.

The judge below instructed the jury " that such omission to ring a bell or sound a whistle constituted a *prima facie* case of negligence, and the defendants are liable to the plaintiff for the damage sustained by him, unless the defendants prove that such damage was not occasioned by such omission." Exceptions were taken, and the judgment was

reversed. *Trumbull,* J., said that " corporations are not liable *prima facie* for any and all damages a party may sustain when they have omitted to give the signal required by law. Until some proof is given tending to show that the injury resulted from the failure to ring a bell or blow a whistle, the burden of proving a negative, and that it did not arise from such failure, should not be thrown on the company."

*Vide,* also, *The Lady Anne,* 1 Eng. Law and Eq. Rep. 672; *Lane* v. *Crombie,* 12 Pick. 177 ; *Burroughs* v. *Housatonick Railroad Co.,* 15 Conn. Rep. 124; *Railroad* v. *Seiser,* before cited; *Carsely* v. *White,* 21 Pick. 254, and cases there cited; *Clark* v. *Syracuse and Utica Railroad Co.,* 11 Barb. Sup. Ct. Rep. 112.

The true question with regard to the injuries complained of was, whether upon the evidence in the whole case, and all the circumstances, the condition of the track, the situation of the crossing, and the plaintiff's contract with the road concerning the character of its defences, the defendants used proper care and diligence, were guilty of no malfeasance or negligence, and whether the plaintiff was himself equally careful and faultless.

And this was peculiarly a question of fact for the jury, and the court should have so instructed them. *Bradley* v. *Boston and Maine Railroad,* 2 Cush. 539, and cases there cited ; *Williams* v. *The Michigan Central Railroad Co.,* decided in 1851, and not yet reported.

III. The plaintiff's declaration does not allege that his cattle were rightfully crossing, or rightfully upon the track. This is an essential, affirmative allegation, proof whereof is requisite to the maintenance of the action, *Lane* v. *Crombie,* before cited, wherein the court say : " We consider the rule to be now well settled that, to enable the plaintiff to recover under such circumstances, he must not only show some negligence and misconduct on the part of the defendant, but ordinary care and dilgence on his own part. *Butterfield* v. *Forrester,* 11 East 61 ; *Har-*

*low* v. *Hummiston*, 6 Cowen 191.; *Smith* v. *Smith*, 2 Pick. 621. The judge who tried the cause so instructed the jury; but in the course of the charge he further stated to the jury that the burden of proof was upon the plaintiff to prove negligence in the defendants, that being the gist of the case; but that when the defendants relied upon the fact that the plaintiff conducted herself carelessly, the burden of proof was upon the defendants to show that the plaintiff had not used ordinary care. The latter part of this direction, we think, was incorrect in point of law, and that the burden of proof was upon the plaintiff to show that the accident was not occasioned by her own negligence in placing herself in a hazardous position without due precaution. In the actual state of the evidence, it is extremely probable that this direction made no difference in regard to the result; still, if the evidence was such that the jury might have decided the other way upon this point, without going decidedly against the weight of the evidence, or, in other words, if the evidence was doubtful and balanced, such a direction may have had an influence to mislead the jury; and, therefore, the court are now all of the opinion that the verdict must be set aside and a new trial granted."

In *Carsley* v. *White*, 21 Pick. 255, the court say: " In cases of injury upon the land, occasioned by collision of two carriages, or by the driving of the carriage of one against the person or property of another, it is well settled that the *onus probandi* is upon the plaintiff to show that he was using ordinary care and diligence; otherwise, it cannot be known that the injury was not attributable to his own negligence."

In an action on the case against a railroad company, to recover damages for injuries sustained in consequence of their negligently running their train of cars against the plaintiff's wagon while he was crossing the railroad track, in order to warrant a recovery, it must appear that the de-

fendants' agents were guilty of negligence, and that the plaintiff was himself free from negligence or fault. *Spencer* v. *The Utica and Schenectady Railroad Company*, 5 Barb. S. C. Rep. 337, and cases there cited. In the latter case, the court remark : " It is equally necessary for the plaintiff to establish the proposition that he, himself, was without negligence and without fault. This is a stern and unbending rule, which has been settled by a long series of adjudged cases, which we cannot overrule, if we would."

See, also, *Blythe* v. *Topham*, Cro. Jac. 158 ; and *Dovaston* v. *Payne*, 2 H. Bl. 527, which was replevin for cattle distrained, damage feasant. There was a demurrer, on the ground that the plea to the avowry did not show that the cattle were lawfully on the highway, and *Buller*, J., said : " There can be no doubt that the passing and repassing on the highway was traversable ; for the question whether the plaintiff was a trespasser or not, depends on the fact whether he was passing and repassing, and using the road as a highway, or whether his cattle were on the road as trespassers."

IV. The plaintiff cannot recover, though the defendants were negligent, if the parties were in *pari delicto*. If the plaintiff's own negligence or rashness or want of ordinary care, concurred in producing the injury of which he complains, he ought not to recover damages for it against the defendants. The burden of proof was on the plaintiff to show, affirmatively, the exercise of such due and proper care and vigilance on his part. *Raymond* v. *The City of Lowell*, 6 Cush. 535 ; *Tonowanda Railroad* v. *Manger*, 5 Denio. 255 ; *Moore* v. *Abbott*, 32 Maine Rep. 46 ; *Rathbun* v. *Paine*, 19 Wend. 399 ; *Libby* v. *Greenbush*, 20 Maine Rep. 47.

In *Marsh* v. *The N. Y. and Erie R. R. Co.*, 14 Barb. S. C. Rep. 364, *Strong*, J., after reference to the statutes of New York of 1848 and 1850, requiring railroad companies to erect and maintain fences on the sides of their roads, and cattle guards at all road crossings, proceeds to say : " These provisions render the companies responsible when they omit

to make the fences or cattle guards, if the damages are caused by them. But they do not make them answerable for the carelessness or wilful misconduct of those who from such causes sustain injuries from them," &c., &c. And in the same case, *Brown*, J., concurring, remarks: " If it be true that the absence of these fences and cattle guards from the sides of the road, relieves the owner of all care and attention over his horses and cattle, and he may wilfully or negligently suffer them to wander and stray in front of a train of cars in full motion, and then recover damages for any loss or injury he may thereby sustain, the statute will receive a construction in conflict with the plainest dictates of justice and common sense."

The defendants' neglect must be the proximate cause of the injury ; not the plaintiff's own carelessness or recklessness. *Carleton* v. *Bath*, 2 Foster's Rep. 563 ; *Jackson* v. *Rutland and Burlington Railroad Co.*, before cited.

V. The evidence " tending to prove the value of the colt," was improperly admitted. The words " not so good as his colt," clearly indicate, (and such was the fact,) that the witness expressed that opinion.

Witnesses can, ordinarily, only state facts upon which their opinions are founded. Here, the witness, not coming within the class of experts, could surely have done no more than describe the age, size, color, qualities, &c., of the colts, from which description the jury might ascertain their positive or comparative value. The witness speaks of another colt, stating it to be " not so good " as the plaintiff's colt· And here is a wide difference between the two. The one may be a little better than the other, or a great deal better. It is simply a matter of opinion, and that of the loosest kind. *Peterborough* v. *Jaffrey*, 6 N. H. Rep. 462 ; *Beard* v. *Kirk*, 11 N. H. Rep. 397, and cases there cited ; *Hoitt* v. *Moulton*, 1 Foster's Rep. 591.

*Perley* and *Fowler*, for the plaintiff.

I.   The defendants were bound to make and maintain an open cattle pass at the place where the animals were killed. The railroad had cut off one part of the plaintiff's pasture from water, and that part could not be used without such a pass.   If the matter had not been regulated by contract, the law would have given the plaintiff such a pass.   Comp. Stat. 350, § 45.

And the stipulation in the deed was clearly intended to provide for the same thing.   When the nature and situation of the plaintiff's property are shown, " a crossing with cattle guards," must be held as a matter of law to mean an open passway for the cattle kept in the pasture to pass and repass to get at water.   The defendants had no right to shut up the pass.   In that case cattle guards would not be needed, and the plaintiff would be deprived of all the use which the nature and situation of his property allowed him to make of the pass, and all that could have been contemplated when the contract was made.

Even if the defendants had the right to shut up the passway they did not assert it, but yielded to the plaintiff's demand that it should be open.   It was, in fact, open by the defendant's assent, and used by the plaintiff as an open passway for his cattle, with the knowledge and license of the defendants.   In every view of the case, the cattle were rightfully there.

II.   The defendants being bound to provide an open passway for the plaintiff's cattle, were bound so to construct and so to use their road that under ordinary circumstances, the cattle should be safe.   If they could use the road without regard to the cattle in such manner that as an ordinary and usual thing, they would be killed, the grant of the passway would be idle and illusory.

III.   The defendants being bound so to use their road that under ordinary circumstances the cattle would be safe, if they kill the cattle, the burden of proof is on them to show that the injury happened by some extraordinary acci-

dent, or by default of the plaintiff. The plaintiff was in no fault. The ruling of the court was therefore correct, that in the absence of proof as to the particular manner in which the injury was done, the law would presume that it happened by the default of the defendants. There are numerous cases in which the law draws this inference of négligence. *Brook* v. *Hunt*, 14 N. H. Rep. 307 ; *Lane* v. *Crombie*, 12 Pick. 177 ; *Ellis* v. *The Railroad*, 2 Ired. 138 ; and *Laydan* v. *Moore*, 8 Barb. S. C. 358, would seem to be very directly in point.

The cases where fires have taken from sparks are very unlike this. Railroads have the right to run their engines through woods and fields in the ordinary way. The land owners in the estimate of damages are paid for their risk ; and there is no obvious way of guarding against it, as in the case of a cattle pass, by slackening speed or keeping a lookout.

IV. The cattle were rightfully on the cattle pass, and the defendants were bound to at least ordinary care. The defendants' argument assumes that the cattle were wrongfully there, and the authorities to show that the defendants were liable only for gross negligence do not appear to be in point.

V. No question arises on the case as to the sufficiency of the declaration ; but it is sufficient, and agrees with the precedents, and the evidence admitted as to the value of the colt was competent. *Whipple* v. *Walpole*, 10 N. H. Rep. 131.

VI. We say further, that the liability and responsibility of the defendants in regard to the plaintiff's animals at this crossing were precisely the same as that of common carriers, and the legal presumption on the occurrence of the injury are the same ; and it has long been settled that the happening of an injury to passengers, or to goods, is presumptive evidence of negligence in the carrier. In all cases of loss the *onus probandi* is on the carrier to exempt himself

from liability, for, *prima facie*, the law imposes the obligation of safety upon him. Story on Bail. § 529, and authorities. It will therefore be sufficient *prima facie* evidence of loss by negligence that the goods have never been delivered to the bailor or his agent, or to the consignee. Story Bail. § 529, and authorities. And the breaking down or overturning of a stage coach is *prima facie* evidence of negligence on the part of the proprietor and his servants. Story Bail. § 529, and authorities.

Where injury results to passengers from the breaking of the coach or harness, or the overturning of the coach, or any other accident occurring on the road, this is of itself presumptive evidence of negligence, and the *onus probandi* is on the proprietor of the coach to establish that there has been no negligence whatever, and that the damage has resulted from a cause which human care and foresight could not prevent. 2 Greenl. Ev. 183, § 222, and authorities.

The same doctrine is more distinctly laid down by Angel on Common Carriers, §§ 46, 48, 49, 202, that a loss or injury is sufficient proof of negligence or misconduct, for the same reason assigned by Story, that the law imposes on the carrier the obligation of safety ; and the doctrine is abundantly supported by authorities. In this case the law imposes the same obligations of safety to the plaintiff's animals in passing their railroad through their own crossing, and therefore the injury to those animals by the defendants' engines was well held by the judge presiding at the trial to be sufficient proof of negligence or misconduct in the defendants' servants.

EASTMAN, J. By § 45, ch. 150 Comp. Stat., (Laws of 1850, ch. 593, § 5,) it is enacted that " every railroad corporation in this State shall make and maintain all necessary cattle guards, cattle passes, and farm crossings, for the convenience and safety of the land-owners along the side of their road. * * *Provided,* that the provisions of this sec-

tion shall not apply in any case where the corporation have settled with the land-owner in relation to such guards, passes and farm crossings."

The eleventh section of the defendants' charter also provides that " if the said railroad, in the course thereof, shall intersect or cross any private way, the said corporation shall so construct said railroad as not to obstruct the safe and convenient use of such private way." And further, " said corporation shall have power to raise or lower such turnpike, highway or private way, so that the said railroad, if necessary, may conveniently pass over or under the same." Laws 1835, ch. 1, private acts.

The act of 1850 increased the duties of the defendants beyond those prescribed in their charter, and required that they should make 'cattle guards, cattle passes, and farm crossings, for the convenience and *safety* of the land-owners along the side of their road, in addition to the provisions of the charter in regard to private ways.

Under this act, wherever it should become necessary to have a crossing, and one should be made, the land-owners would have the right to use it in all proper and reasonable ways, with their teams, horses, cattle, sheep, &c. The act requires the crossing to be made for the convenience and safety of the land-owners, and they would consequently have the right to cross the road at all reasonable times, and of necessity the right to be upon the road while crossing. Having this right, they would lawfully and rightfully be upon the road, and the corporation could not injure their beasts thereon without liability for the damage, unless the injury should arise from inevitable accident, or through the fault of the owner. The law does not give the land-owners a use of the road which is paramount to that of the corporation, and they have not the right to use it in defiance of the corporation. They would not, for instance, have the right to drive upon the crossing, when they knew that a train was coming, and insist that the train should stop to suit their

convenience.    The powers of the land-owners do not go to such an extent; they are subordinate to those of the corporation; but at the same time the statute gives them the right to cross the road in all reasonable ways and at all reasonable times; and having such a right, the corporation cannot wilfully destroy their property, nor excuse themselves in case of carelessness; they cannot be heard to say that they are liable only in case of gross negligence.    The authorities which go to show that a railroad is not liable for injuries, except in case of gross negligence, are founded upon the leading fact and principle that the plaintiff is himself in fault.    We do not question the soundness of that position; but the rule does not apply to a case where the plaintiff is rightfully upon the road, as provided by this statute.

By the provisions of law, then, the plaintiff had the right to require of the defendants that the pass-way should be such as would insure safety in crossing the railroad in all legitimate ways and at all seasonable times, provided no settlement or contract should be made between him and the corporation, by which the defendants should be relieved from this liability.    Was the contract between the parties of such a nature as to change the law?

As the law stood, the defendants could make the crossing over or under their road, in such a manner as not to interfere with the free and unobstructed use of the railroad at all hours, and so as to insure the safety of all persons, teams or animals that might cross the road.    The corporation would thereby relieve themselves from all care whatever in the management of their engines and trains, so far as the plaintiff might be affected in this particular.    But he saw fit to require that the defendants should prepare a crossing on a level with the track.    A crossing under or over the road would not answer his purposes; for what reason, is left to conjecture.    Perhaps such a crossing would, from the situation of the land, be of much less use to him; and the in-

convenience in crossing with teams might be great upon any but a level path.

The provision was also made in the deed that the defendants should fence the road; but this the law required, as well as a convenient and safe crossing. The only variance between the law and the contract, consists in the absolute requirement in the deed that the crossing should be on a *level* with the track. Did the contract change the liability of the defendants?

We have reflected upon the clause in the deed with some care, and not without some doubt as to the true construction to be put upon it. But our conclusion is, that it was not intended to change the legal duties and liabilities of the parties. The plaintiff chose not to leave the matter with the corporation to say what the position of the crossing should be; and he chose further, to make it a part of the condition of the conveyance, that the crossing should be on a level with the track. And the defendants took the land with this condition attached. They agreed that the crossing should be made on the level, instead of over or under the road, or in such way as they might choose to make it; and in thus agreeing, no legal liabilities as to the use of the pass-way or the safety of the cattle in crossing, were changed; but the defendants took upon themselves the additional risk of a crossing on the level with the track, for the sake of obtaining the deed.

The defendants having put up gates at this crossing, and the plaintiff having insisted that they should be removed, he might perhaps suppose that the corporation would make a crossing over or under their road; and hence he might require that it should be on a level with the track. This act of the corporation, in putting up gates, would also seem to show on whom they supposed the liability would rest in case of the destruction of property, under ordinary circumstances, at this crossing; that it would be upon themselves. And if the parties had intended to change their legal rights

and liabilities by the provision in the deed, it would have been very easy to have added a clause to that effect.

With this view of the position of the parties and the law, we think that the plaintiff's pasture being divided by the track of the railroad into two nearly equal parts, one of which was destitute of water in the dry season, the provision for cattle guards implies that the crossing was to be used by loose cattle in the pasture, not under the care of a driver or herdsman; that the contract of the deed contemplates that the cattle and animals of the plaintiff were to be placed in the pasture, and there left to take care of themselves, according to their natural instincts, to pass from one part of the pasture to the other for food and water, at their pleasure.

It was, therefore, neither the fault nor the negligence of the plaintiff that the animals were upon the track, because that was a contingency which the contract contemplated, and which was unavoidable, from the well known habits and character of such creatures. The putting of a man's cattle into his own pasture, and leaving them there to their own guidance, cannot be deemed carelessness on the part of the land-owner. Ordinary care and diligence do not require an attendant. In case of crossing with a team, ordinary care would require that it should not be driven upon the road at such times as the cars are known or expected to pass; or in case of driving cattle across the road, ordinary care would require similar prudence in regard to the time. But where the animals run at large in the pasture, ordinary care and diligence would not require the plaintiff to keep a "look-out" at the crossing to prevent their going upon the track when the cars were expected, or were in sight, or the whistle was blown. Such care would be extraordinary for the owner of land to exercise, and from the frequency with which the engines and cars pass over this road, and the unavoidable irregularities which sometimes occur, it might subject this plaintiff to an amount of expense greater than the

income or even value of his pasture. It is quite evident that the plaintiff would never have agreed to the contract, had he supposed that he was to keep a " look-out" at this crossing, or run the risk of having his animals in the pasture destroyed without redress.

The evidence here tended to show that these animals were running loose in the pasture, and were attempting to cross the road at the time they were killed. There is no suggestion to the contrary ; and such we take to be the fact. This being the case, the plaintiff having the right to have his creatures cross the road, and to run at large in his pasture, he was using all the care that the law required of him, under the circumstances, all that was necessary to bestow upon animals running loose in his pasture. Ordinary care and diligence thus appearing on the part of the plaintiff, was the alleged negligence and want of proper care, on the part of the defendants, shown, as set forth in the declaration ?

In regard to the colt, the case finds that he was killed by the engine, at the crossing, and that evidence was introduced showing the condition of the track, and the manner in which the defendants were running their train at the time the colt was killed. And upon this evidence the counsel requested the court to instruct the jury that the defendants were not liable except for gross negligence. This the court declined to do ; and, as we think, and according to the opinion already expressed, correctly. The colt being rightfully upon the road, it was only necessary to show carelessness, ordinary negligence.

With regard to the cow, the evidence was, that immediately after the passing of the defendants' freight train, she was found at the side of the track, in a dying state, and appeared to have been struck by the engine. The defendants introduced no evidence in explanation, and the court instructed the jury that in the absence of explanation, it would be presumed that the injury was not accidental, but was either wilful or the result of carelessness ; that the defend-

ants would not be answerable for a wilful injury by their servants, but were for negligence. Was this instruction correct? Was the evidence competent to be submitted to the jury as evidence of negligence? There is no pretence that the act was a wilful one. The plaintiff makes no such claim; and the jury, by their verdict, have negatived any such fact. The idea of design being thus excluded, the evidence shows either negligence or accident. And we take the law to be, that if a party shows himself to be in the rightful exercise of his property or privileges, and while so exercising them, an injury or damage is done to his person or property by another, such injury is not presumed to be accidental or excusable, but the injury being shown, the burden of the proof is on the defendant to lay before the jury such circumstances as shall exonerate him from responsibility. The damage being proved, the defendant is answerable for negligence, unless he shows a want of blame on his part. The injury to the property is of itself evidence of negligence.

As, then, the cow was rightfully upon the crossing, and was killed by the defendants, the burden of proof was upon them to show that it was done by no fault of theirs, but by some accident, or by the fault of the plaintiff; and the ruling of the court was correct in regard to the presumption arising upon such a state of facts. The evidence was competent to show negligence, and that being shown, it was for the defendants to exculpate themselves. *Ellis* v. *Railroad Co.*, 2 Iredell's Rep. 138; *Suydam* v. *Moore*, 8 Barb. Sup. Ct. Rep. 358.

In the case last cited, the railroad company were required by law to keep up fences on the sides of their road, and to construct and maintain cattle guards at road crossings; the plaintiff's cow came upon the track, and was run over and killed; and it was held that the company, or its agents, were liable to the owner of the cow, without any further proof of negligence.

Taking the whole case together, it seems to us to amount to this: The plaintiff's pasture was cut in twain by the railroad, and he had the right to have his cattle graze in the pasture without a herdsman, and to cross the track from one pasture to the other, according to their inclination. This the law and his contract with the defendants gave him. *Prima facie* his animals were rightfully upon the track, and ordinary care and diligence did not require that he should keep any one to watch them; there was no fault in him in their being there. It was enough, then, for the plaintiff to show, in the first instance, that the animals were killed by the defendants' engines, to sustain his action. That made out a case of negligence. There was no occasion to show gross negligence, for his animals were rightfully on the track. Having the right to have the creatures on the track, and showing that they were killed by the defendants, it then devolved upon them to show that they were destroyed without fault of theirs.

The evidence in regard to the value of the colt was admissible, upon the authority of *Whipple* v. *Walpole*, 10 N. H. Rep. 131. In that case, the witness was asked what horses like those lost by the plaintiff cost at Charlestown, in this State, near which place the loss occurred, &c., and the question was held admissible. In this case, the plaintiff was permitted to prove the price for which another colt of the same age as the one lost, and sired by the same horse, but not so good as the plaintiff's, was sold in the vicinity, the spring before the loss. Both of these cases would appear to trench somewhat upon the rule excluding the opinion of witnesses, for both necessarily imply a comparison and an opinion, to some extent, between the horses lost and sold. But this is a rule oftentimes difficult to enforce with strict accuracy; and we think that the decision in *Whipple* v. *Walpole* would justify the admission of the evidence in this case. The expression in the case, " but not so good as his colt," appears to be the condensed statement of the pre-

White *v.* The Concord Railroad.

siding justice of the effect of the evidence, and not the direct opinion of the witness.

This, as we view it, disposes of all the questions raised by the case, as transferred. But counsel, in their argument, have taken the position that the declaration does not allege that the cattle were rightfully crossing or rightfully upon the track; that this is an essential allegation, proof of which was necessary to maintain the action.

As no question of this kind is presented by the case, it would be unnecessary for the court to express any opinion in regard to it. But as we have examined the matter somewhat, we think it proper to say that, upon investigation, we are of opinion that after verdict the declaration is sufficient. Our impression also is that it would be good upon demurrer. The declaration states that the animals were passing over and across the railroad of the defendants, from the plaintiff's land on one side of the railroad to the plaintiff's land on the other, through and along an open crossing, prepared by the defendants for the purpose of enabling the horses and cattle of the plaintiff, on both sides of the railroad, to pass from one side of the road to the other, through and along the same. The law, upon these facts, would seem to make the plaintiff's animals rightfully upon the road. As matter of caution, however, in pleading, it would have been well to have stated that they were rightfully crossing the railroad, and were rightfully upon the track. But after verdict, it is quite clear that the declaration is sufficient. If the general terms of a declaration are broad enough to comprehend the proof, and if enough appears upon it to show that the plaintiff has a good cause of action, all defects will be regarded as cured by the finding of the jury. After trial, and verdict for the plaintiff, judgment will not be arrested, unless the record shows a clearly defective cause of action. Every intendment is to be made in favor of the declaration, and whatever is implied in or inferable from the finding of the jury, will be presumed in favor of the verdict. *Sewall's*

*Falls Bridge* v. *Fisk & Norcross,* 3 Foster's Rep. 171; and various authorities there cited.

Our opinion is that the defendants are without any valid defence to the action, and that there must be
*Judgment on the verdict.*