## CHANDLER, ADMINISTRATOR OF PRATT v. DAVIS.

In an action for money paid, if the plaintiff and defendant had given their two joint and several notes of equal amount, the production of the two notes on trial by the plaintiff is *prima facie* evidence that he paid them both.

Under the statute, which gives the court in certain cases a discretion to allow a party to testify for himself, though his adversary is an executor or administrator, he will not ordinarily be admitted to testify to a fact, which was within the knowledge of the testator or intestate, and to which he might have testified if he were living.

ASSUMPSIT for money paid. The plaintiff claimed to recover a sum equal to one half of two joint and several notes for $1000 each, dated March 20, 1860, signed by Pratt and the defendant, and payable to one Hanson, one in one year, and the other in two years from date, less $161.65, the amount endorsed on one of them. It was agreed that Pratt and the defendant, on the 20th day of March, 1860, bought a wood lot of Hanson and gave the notes, as part of the price, to Hanson, who had died before this trial. The plaintiff then introduced as a witness, one Locke, who testified that he acted as an appraiser of Pratt's estate, and that he was present when the notes were found among Pratt's papers after his death, and that mutual receipts between Pratt and Davis, dated December 1, 1862, were presented to the appraisers. The plaintiff then introduced the notes in evidence. On the back of one of them, in Pratt's hand-writing, was the following: "Received the interest on said note up to Dec. 1, 1862, $161.65." This endorsement was not put in as part of the plaintiff's evidence.

The notes were in no part erased or defaced.

The plaintiff here rested his case, and the defendant moved for a nonsuit, which was denied by the court. Subject to plaintiff's exception, under ch. 4074, Laws 1865, the court allowed defendant to testify.

Subsequently one Knight, who had married a daughter of Pratt, testified for the plaintiff to admissions made by the defendant after Pratt's death, and, subsequently, defendant gave testimony in conflict with Knight's testimony. The defendant also testified that he was a son-in-law of Pratt, that he cut and sold the wood and hay from the wood lot, paid the expenses, and received the money for the wood and hay, and on the first day of December, 1862, paid Pratt his half of the profits; that he was largely engaged in such transactions, and kept no accounts, except a pocket memorandum book for each year, and that Pratt was a trader having a store.

The court instructed the jury that the fact that the notes were found among Pratt's papers after his death, did not raise a legal presumption either that defendant had or had not paid one half of them, or had or had not furnished the money to pay one half of them; that Pratt's possession of the notes was a fact for the jury to consider; that it was for the jury to decide whether, under all the circumstances of the case, the fact should have great, little, or no weight upon the question whether the defendant paid one half of the notes, which was the only question in the case. To which instructions the plaintiff excepted.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside.

*Jordan* and *Small*, for the plaintiff.

*Eastman & Wells* and *Wheeler*, for the defendant.

PERLEY, C. J.   When a note or bill is found, after payment is due, in possession of a party, who was bound to pay it, this is *prima facie* evidence that it has been paid, and that it was paid by the party who has possession of it.   2 Greenl. Ev. sec. 527 ; *Smith* v. *Smith*, 15 N. H. 55.   This is a very familiar rule of evidence applied in every day's practice ; and the reason of the rule is obvious, for, in the usual course of business, the note will be delivered on payment to the party that pays it.   *Brembridge* v. *Osborne*, 1 Stark. 374.   And there can be no presumption, till the fact is proved, that two or more persons, who owe a debt secured by a note, made up a common purse and paid it out of a joint fund.   If such an arrangement were made we certainly should not expect the note to be left in the hands of one of them without something to show how the business was transacted ; and, therefore, in such case, the presumption will be, till the contrary is shown, that the party to the note, who is found in possession of it, paid it, and the whole of it.   Where one of two sureties sues the other for contribution, if he produce the note on trial, it is *prima facie* evidence that he paid the whole of it.   In such case the two sureties are equally bound to pay the note, and I find it quite impossible to distinguish that case from this, where two joint and several makers are equally bound to pay the debt. In both cases the natural inference is, that the note would be delivered on payment to the party that paid it, and remain in his hands till the business was adjusted with the other.

If there had been but one note in this case, the general rule would apply, that possession of the note by the plaintiff's intestate, was *prima facie* evidence that he paid it.   But the reason of the rule applies still stronger to this case, for here were two notes of equal amount, which the two makers were equally bound to pay.   If each paid his part, and for any reason it was found convenient to preserve the notes uncancelled, why was not one left in possession of the intestate and the other in that of the defendant?   And this circumstance, that here were two notes of equal amount, which the two makers were equally bound to pay, distinguishes the present case from *Heald* v. *Davis*, 11 Cush. 318, cited for the defendant.   That case goes upon the assumption, that, as both parties were equally bound to pay, it must be presumed that both contributed equally to the payment, and that, "inasmuch as possession could not be by both individually, it would be found with one, although both had contributed equally to the payment ;" a reason which evidently does not apply to this case, where there were two notes of equal amount, and there was no difficulty, if half was paid by each of the makers, in leaving one of the notes in the possession of each.   No authority is cited for the decision in *Heald* v. *Davis*, and the reason assigned for it is not

CHANDLER *v.* DAVIS. [Strafford,

such as would induce us to follow it without hesitation. It would apply equally well to the case where one of two sureties, who sued the other for contribution, produced the note, on which they were jointly and severally liable, as is in conflict with the general rule, which we take to be extremely well established, that the production of a note by a party, who was bound to pay it, is *prima facie* evidence that it was paid by him. 1 Greenl. Ev. sec. 38; *Baring* v. *Clark*, 19 Pick. 220, 227; *McGee* v. *Prouty*, 9 Met. 547, 551.

We are of opinion that the two notes found among the papers of the intestate, was *prima facie* evidence that they were both paid by him.

. The act of June 27, 1857, prohibited a party from testifying for himself when the adverse party was an executor or administrator. The act of July 30, 1865, re-enacts this prohibition, with the proviso that "the court or tribunal trying the cause, may, in its discretion, allow either party to testify, or the deposition of such party to be used, such discretion only to be exercised when it is clearly made to appear from the evidence that actual injustice or fraud will otherwise be done, and such discretion shall be subject to the revision of the whole court."

In *Moore* v. *Taylor*, 44 N. H. 375, it is said that the design of the provision in the statute, which excluded the survivors from testifying against the estate of a deceased party, was "to place the parties upon equal footing, and not allow the living party to a trade or transaction to be a witness in relation to it, when the other party to the same transaction, being dead, cannot testify." In the same judgment it is said that cases might occur where the matter in dispute was negotiated between the surviving party and some third person, who was alive and might testify, and that in such case the reason on which the exception in the statute rested would not apply; and it was suggested in the same case that "it might be useful to give the courts the discretionary power, in all cases where one party is an executor or administrator, to allow the other party to testify, where the case was clearly one not coming within the principle and reason of the rule, on which this class of exceptional cases stands."

We have in *Moore* v. *Taylor* a clear and unquestionably a correct explanation of the reason for the provision of the statute, which excludes a party from testifying where his adversary is an executor or administrator; and also what I think will be found a safe guide in exercising the discretion given by the subsequent statute of 1865, which came soon after the publication of the report in *Moore* v. *Taylor*, and is likely enough to have been passed in consequence of the suggestion found in that case. Where the deceased had personal knowledge of the matter in dispute, and might, if living, be a witness, it would be unequal and manifestly unjust to allow the survivor to testify, inasmuch as the other party, being dead, could not contradict or explain the evidence. There is no reason to suppose that the intention of the last statute on this subject, was to give the court a general discretion to overrule and abolish the reason, on which the exception in the former statute rested; but the intention was, as I think, in extraordinary cases, where the reason of the exception did not apply, to give the court, in a clear case

where injustice would evidently be otherwise done, a discretion to admit a party to testify against an executor or administrator.

If the fact in dispute was not known to the deceased, and was known to a third person, who might be a witness, the reason on which the exception is founded would not apply, and in such cases there would be nothing unequal or unjust in allowing the survivor to testify. But as a general rule, where the deceased had knowledge of the facts, and might, if living, be a witness, it would be unequal and unfair to allow the survivor to give his uncontradicted and unexplained account of the transaction. We do not undertake to say that a case may not occur, where, to use the language of the act, it might not, on the evidence before the court, clearly appear that injustice or fraud would be done, unless the surviving party were allowed to testify, though his testimony went to matters within the knowledge of the deceased. But we think, that, for ordinary cases, the safe guide and the decisive test is found in the inquiry whether the deceased, if alive, could testify to the same matters. The intention, evidently, was to guard the exercise of the discretion permitted by the act of 1865, against the danger of admitting the survivors to testify where it would cause the inequality and injustice excluded by the positive and unqualified exception in the former statute. The language used for that purpose is strong and emphatic. It must appear *clearly* to the court that *actual* fraud or injustice would be the consequence of excluding the survivor, and the exercise of this discretion may, in all cases, be revised by the whole court. It was undoubtedly intended that the discretion given in such terms, and with such limitations, should be exercised with caution and reasonable strictness, and not so loosely as to infringe on the general principle that the surviving parties shall not testify to matters which were within the knowledge of the deceased, and to which he might have testified if he were alive.

One point, to which the defendant testified, was, whether the plaintiff's intestate paid the whole of the two notes, or the defendant paid half of them. This was a fact within the knowledge of the deceased, to which he might have testified if he had been alive; and as Hanson, the payee, was dead, there was no witness, so far as the case shows, who could testify on that point, but the defendant. The nature of the fact to be proved, it being one necessarily within the knowledge of the intestate, and the circumstance that no witness was produced, or probably could be, who knew the fact, but the defendant, makes this a case where the reason for the rule excluding the surviving parties, applies with peculiar force; but I see nothing to take it out of the operation of that rule. The endorsement on the note, being in the hand-writing of the intestate, was not competent evidence for the plaintiff, and was not put in by him; if in the case at all, which does not appear, it must have been introduced by the defendant, and affords no excuse for admitting him to testify.

We are of opinion that possession of the notes by the intestate, was *prima facie* evidence that he paid the whole of them; and that the defendant should not have been admitted to testify to the payment of the notes.

*Verdict set aside.*