HOIT v. RUSSELL. { Mar. 22, .1876.

56 559
68 265

*Practice—Payment of referee's fees—Deed—Date, when contradicted—
Evidence—Mortgage, with power of sale—Defective proceedings to fore-
close—Title under, in third persons, when protected.*

An action was referred to a referee, under the statute of 1874. The plain-
tiff declined to appear before the referee, who reported that fact to the
court. The plaintiff, having elected a trial by jury, was ordered by the
court to pay the referee's fees before going to the jury. It did not ap-
pear that the order prevented her from presenting her case to the jury
as fully as she otherwise would have done. *Held*, that the imposing of
the order presented no ground for exception.

The defendant introduced an office copy of a mortgage containing a power
of sale from the mortgagor to sell for condition broken, and under which
he claimed title. The date of the mortgage was subsequent to that of
the acknowledgment. The magistrate before whom the deed was ac-
knowledged was permitted to testify as to the true date of the acknowl-
edgment. *Held*, that the evidence was properly admitted.

Under the statute, which gives the court in certain cases a discretion to
allow a party to testify for himself, though his adversary is an executor
or administrator, in ordinary cases the safe guide and decisive test is
found in the inquiry whether the deceased, if alive, could testify to the
same matters. *Chandler* v. *Davis*, 47 N. H. 462.

In an action of trespass *qu. cl.* for cutting and carrying away wood and
timber from the lot of the plaintiff's intestate, the plaintiff called seve-
ral witnesses, foreigners, and ignorant men, some of whom chopped, and
others of whom drew away the wood and timber from said lot, who tes-
tified as to the amount of wood and timber taken therefrom. It appeared
that the defendant was operating upon an adjoining lot at the same
time, and the evidence as to the amount taken from each lot was indefi-
nite. It appearing to the court that injustice might be done the defend-
ant,—in this, that he might be charged for a greater amount of wood and
timber than he actually took from the premises in dispute, unless per-
mitted to testify,—he was admitted to testify only as to the amount of
wood and timber taken from said lot, and the expense of cutting and
removing the same. *Held*, that the discretion given by the statute, as
to admitting the surviving party to testify, was properly exercised.

Evidence of the price at which other property, of like character and con-
dition with that in controversy, sold in the vicinity, at or about the time
in question, is admissible.

V. mortgaged certain premises to C., the mortgage containing a power of

sale, authorizing C., upon a breach of the condition of the mortgage, to sell the premises by auction. C., by his agent S., advertised and sold the premises by auction for condition broken, which were bid off by S. C. conveyed to S., and S. to R., a purchaser in good faith and for an adequate consideration, without knowledge or notice of any fraud in the sale. R. entered, and cut and carried away the wood and timber, and V.'s administrator brought trespass *qu. cl.* against him. The jury were instructed that neither C., nor S. acting as the agent of C., had any right to purchase the property as against V.; but that if R., the defendant, at the time when he purchased, had no knowledge of this defect in the sale, or in the title of S., and no notice of such facts as should have put him, as a reasonable man, upon inquiry, then his title would be good, and the plaintiff could not maintain her action against him. *Held*, that the instructions were correct.

FROM CHESHIRE CIRCUIT COURT.

TRESPASS *quare clausum*, and cutting and carrying away wood and timber from the Fox lot, so called, in Chesterfield, prior to March 19, 1870. Plea, the general issue.

The action was, at the October term, 1874, referred by order of court to a referee, who gave due notice of the time and place of the hearing to the parties. The referee attended, and also the defendant, but the plaintiff did not appear, and the referee reported these facts to the court; whereupon, on motion of the defendant, the court ordered that the plaintiff should pay the referee's fees before he should be permitted to go to the jury, and the plaintiff excepted.

The evidence tended to prove that Rebecca Very, the plaintiff's intestate, was the former owner of the premises in question; that, October 24, 1863, she, by a mortgage duly executed, conveyed said premises, with others, to John Cole, to secure the payment of a note of one thousand dollars, payable two years after date; that said mortgage contained a power of sale authorizing the mortgagee, upon a breach of the condition of the mortgage, to sell the premises by auction.

December 21, 1865, the note having become due and being unpaid, the mortgagee proceeded to sell the same by auction for breach of condition, and for the purpose of foreclosing the right of the mortgagor, in accordance with the stipulations contained in the said mortgage. The notice of sale was signed by "John Cole, by his attorney, Abiathar Shaw." Cole lived at that time in Medway, Mass., and was the son-in-law of Shaw. There was no evidence that Shaw had any written authority from Cole to advertise and sell said premises by auction, or that he ever gave him any parol instructions to sell the same. Ralph J. Holt, a witness called by the defendant, acted for Cole as auctioneer and agent for the sale. The land was bid off by Shaw, acting also as the agent and attorney for Cole. No deed was given by Cole to Shaw, nor any money paid by Shaw to Cole or to Holt, at the time of the

sale, nor at any time before the purchase of the premises by the defendant. The defendant purchased the land May 12, 1869, at which time he paid the purchase-money, amounting to $630, to Holt, who then endorsed the same upon the note of Rebecca Very to Cole, for the security of which the mortgage from her to Cole was given. No money appeared to have been endorsed on the Very note before that time. May 12, 1869, the defendant took a warranty deed of the premises from Shaw, and Shaw took a quitclaim of the same from Cole, both bearing date on that day; and the payment of the money, the endorsement of the same on the note of Mrs. Very, and the delivery of the deeds by Shaw and Cole, were simultaneous.

The defendant introduced a copy of the mortgage deed, which appeared to be dated October 29, 1863, and the acknowledgment appeared to be dated October 24, 1863. The plaintiff objected that it was inadmissible, because the acknowledgment appeared to be prior to the date of the mortgage. The court ruled that it was competent for the defendant to show the true date of the deed and the acknowledgment, and to explain these dates; to which the plaintiff excepted. The defendant then called D. H. Woodward, who took the acknowledgment of the mortgage, and who, subject to the plaintiff's exception, testified that the date of the acknowledgment was erroneous, and that the same was not acknowledged until after it was executed by the mortgagors.

The plaintiff called several witnesses, being Frenchmen, who chopped, and others, who drew away the wood and timber from said lot, who testified in regard to the amount of wood and timber taken therefrom; and it appearing that the defendant was the owner of and operating upon another lot, adjoining the Fox lot, and the evidence as to the amount taken from each lot being indefinite, the defendant's counsel offered him as a witness upon the question as to the amount taken from the Fox lot; and it appearing to the court that injustice might be done the defendant if excluded from testifying,—in this, that he might be charged by the jury with a greater amount of wood and timber than he actually took from said Fox lot,—the court, subject to the plaintiff's exception, admitted him as a witness; but he was only allowed to testify as to the amount of wood and timber taken from said lot, and the expenses of cutting and removing the same. Subsequently the plaintiff called witnesses to testify to admissions and statements made by the defendant, not in the presence of the plaintiff's intestate, tending to show that he knew that the plaintiff claimed that there was no valid foreclosure of said mortgage; and the defendant was then recalled without objection, and testified that he had no knowledge whatever of any claim of the plaintiff's intestate at the time he purchased said premises, and contradicting or explaining the statements made by the plaintiff's witnesses.

As bearing on the question of damages, the price paid by the defendant for the Fox lot was given in evidence, it appearing that the same was purchased in 1869, and, subject to the plaintiff's exception, the defendant was allowed to show what he paid for the French lot

adjoining, and similar in character, and which he purchased about the same time, and which was operated in connection with the Fox lot.

The plaintiff requested the court to instruct the jury,—(1) " That, as the defendant claims title under John Cole, the mortgagee of Rebecca Very, who in the matter of sale under the mortgage acted as trustee for Mrs. Very, the defendant is bound to prove affirmatively that the sale was conducted in good faith, and legally, and that the price for which the land was sold was in fact paid by Shaw to Cole; (2) that it is incumbent upon the defendant to show that Shaw had due power and authority from Cole, in writing, to act as his attorney in the sale of said land; (3) that Shaw, acting as the attorney of Cole in the sale of said land, could not legally bid off the same either for Cole or himself, and that, having bid off said land himself, the sale was fraudulent and void so far as Mrs. Very was concerned, and all purchasers having notice; (4) that the evidence does not prove that Shaw ever had any legal title to the land."

The court declined to give these instructions as requested, but did instruct the jury that if Shaw assumed to act as the agent of Cole, and advertised and sold the land under the mortgage according to the terms of the condition of it, and Cole afterwards conveyed the premises in pursuance with the sale by Shaw, it would be a ratification of Shaw's acts, and would be binding upon Cole; that Cole would have no right to purchase the property himself as against Mrs. Very; and if Shaw acted as attorney for Cole, and purchased either for himself or for Cole, he would have no better right than Cole to purchase, and the title as to him would be void; but if Russell, the defendant, at the time when he purchased, had no knowledge of this defect in the sale or in Shaw's title, and no notice of such facts as should have put him, as a reasonable man, upon inquiry, then his title would be good, and the plaintiff could not maintain this action against him. That if Cole, at the time he conveyed the premises to Shaw, was in possession of the same claiming under his mortgage, and Shaw at that time went into possession claiming under the mortgage, and the defendant, when he took possession, claimed under the mortgage, and was in possession claiming thereunder at the time this suit was brought, then the plaintiff could not maintain this action; but that, if the parties were in possession claiming under a defective foreclosure of the mortgage, their possession would not avail the defendant.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside and for a new trial for supposed error in the foregoing rulings and instructions.

The questions of law arising on the foregoing case were transferred to this court by STANLEY, J. The question, as to the proper exercise of discretion in ordering the referee's fees to be paid, was also transferred.

*Burke* (with whom was *Parks*), for the plaintiff.

*Wheeler & Faulkner*, for the defendant.

SMITH, J. 1. It does not appear that the plaintiff was prevented from presenting her case as fully to the jury as she would have done if she had not been required to pay the fees of the referee. As the verdict, therefore, was not affected by the order, the ends of justice do not require that it should be disturbed on that account. The report of the referee was not read to the jury, and I cannot see how the plaintiff's constitutional right to a trial by jury was in any way abridged or impaired by the order in regard to payment of fees.

2. A deed is good, although not dated, or though it have a false date, or an impossible date, as February 30th, provided the real day of its being dated or delivered can be proved. 2 Bl. Com. 304. In ancient times, the date was commonly omitted. *Ib.*, note 12; *Gibson* v. *Poor*, 21 N. H. 446, 447; *Lee* v. *Mass. Fire Ins. Co.*, 6 Mass. 219. It is to be assumed that a proper case was made for the introduction of the copy. If the original had been produced, the court would, upon the testimony of Woodward, the magistrate who took the acknowledgment, have permitted him to amend his certificate. To this I see no objection, if the plaintiff deemed the date material. But the original not being produced, it was impracticable to make such amendment. Under such circumstances, the evidence of the magistrate was properly received to show the date of the acknowledgment.

3. Whether the defendant should be permitted to testify, the plaintiff's intestate being dead, depended upon whether it was made clearly to appear from the evidence that actual injustice would otherwise be done; and the discretion exercised by the presiding justice is subject to revision by this court. Gen. Stats., ch. 209, sec. 17. In ordinary cases, " the safe guide and decisive test is found in the inquiry whether the deceased, if alive, could testify to the same matters." *Chandler* v. *Davis*, 47 N. H. 465. The case does not find whether the plaintiff's intestate had any knowledge of the facts to which the defendant was permitted to testify. But Judge PERLEY, in *Chandler* v. *Davis*, says,— " We do not undertake to say that a case may not occur, where, to use the language of the act, it might not, on the evidence before the court, clearly appear that injustice or fraud would be done unless the surviving party were allowed to testify, though his testimony went to matters within the knowledge of the deceased." This discretion thus vested in the court will always be exercised with caution, so as not to conflict with the principles thus laid down. If the rule is ever to be relaxed, this seems to be clearly a case where it may safely be done. It is quite apparent that the witnesses introduced by the plaintiff had no accurate means of stating the amount of wood drawn from the Fox lot and from the French lot, and they would be quite likely to state the amount drawn from each lot from data entitled to but little consideration by the jury. The question, however, is not material at this time, the verdict being for the defendant.

4. For the same reason, the evidence as to the price paid for the French lot becomes immaterial. That evidence of the price at which other property of like character and condition was actually sold in the

vicinity, at or about the time in question, is admissible, is settled beyond controversy. *White* v. *Concord Railroad*, 30 N. H. 188, and numerous other cases in the report; Morrison's Digest, title Evidence, pp. 362, 363.

5. The instructions to the jury were correct, and covered the whole case. Cole's authority to sell the mortgaged premises was in writing, being contained in the mortgage, and so within the statute of frauds. But the question was not whether the foreclosure was valid as against the plaintiff. In executing the mortgage she had conferred the power on Cole to sell the premises, and had designated what steps should be taken by him. The real question was, whether the defendant was a purchaser in good faith for a full consideration, chargeable with no laches, and placed in no circumstances requiring him to institute inquiries. If the record gave the defendant any information of a defect in the title, or any intimation of the fraud practised by Cole on the plaintiff, he could of course stand no better than Cole himself. All this was left to the jury, and they were particularly instructed that neither Cole nor Shaw could purchase the property as against the plaintiff; and the jury must have understood, from the instructions, that if Russell purchased with knowledge of the defect in Shaw's title, or with notice of such facts as should have led him to make inquiries, he would acquire no title that would be good against the plaintiff.

The doctrine upon which the defendant's title must stand was held in this case, when decided at the August adjourned term, 1874 (not yet reported), to rest upon the authority of *Harrison* v. *Forth*, 1 Eq. Abr., Notice A 6, p. 331, decided in 1695, which is, that every *bona fide* purchaser without notice, and not chargeable with notice, shall be protected and confirmed in his title, according to the legal interpretation of the instrument of conveyance. FOSTER, J., *arguendo*, quotes Judge Story as follows : " If a person who has notice, sells to another who has no notice, and is a *bona fide* purchaser for a valuable consideration, the latter may protect his title, although it was affected with the equity arising from notice in the hands of the person from whom he derived it ; for, otherwise, no man would be safe in any purchase, but would be liable to have his own title defeated by secret equities of which he could have no possible means of making a discovery ; "—see, also, *Piper* v. *Hilliard*, 52 N. H. 211. Under the instructions of the court, the jury must have found that Russell had no such knowledge or notice.

The first and second instructions requested by the plaintiff were therefore properly refused, because they conflicted with the opinion delivered in this case at the August adjourned term, 1874. The third and fourth instructions prayed for were substantially given by the court, though not in the terms requested. But, as before said, the main question for the jury was, whether the defendant purchased in good faith, without knowledge or notice of the infirmity in the title of Shaw.

According to these views, then, the defendant is entitled to judgment on the verdict.

LADD, J., concurred.

* RAND, J., C. C. This action was referred, and due notice of the hearing was given by the referee to the parties. The referee attended, and also the defendant, but the plaintiff did not appear, and the referee reported the facts to the court. Thereupon, on motion of the defendant, the court ordered that the plaintiff should pay the referee's fees before she should be permitted to go to the jury; and the plaintiff excepted.

The referee law of 1874 is closely analogous to the provisions of the General Statutes in regard to auditors. Sec. 5 of ch. 212 of the Gen. Stats. provides that "If either party neglects or refuses to appear before the auditor, * * the auditor may certify the same to the court." And section six declares that "The court shall thereupon render judgment against such party, as upon nonsuit or default, and, if necessary, cause the damages to be assessed by the jury."

These provisions of the General Statutes have been incorporated into the new rules, and made applicable to referees—Rule 67. I think the court, in the exercise of its discretion, might have ordered a nonsuit in this case, reasoning from analogy, and applying the rule to references which the law applied to auditings. If a nonsuit might have been ordered, it would seem to follow that it was within the discretion of the court to order the plaintiff to pay the referee's fees before going to the jury. The greater power would include the less. No constitutional question appears to be involved in this controversy. The case of *Copp* v. *Henniker*, 55 N. H. 179, establishes the doctrine that the act of 1874 is constitutional, so far as it authorizes courts to send causes to referees. It follows that the plaintiff, or the defendant, or the county, must pay the referee's fees, and if any injustice has been done, it may be remedied without disturbing the verdict. The report of the referee was not offered in evidence, and it is not easy to see how the right of the plaintiff to a trial by jury has been in any way impaired by the order of the court in regard to the fees of the referee. The plaintiff has had her trial before the jury, and the obnoxious order could not have influenced the result of that trial in the least degree.

2. It is objected that Shaw had no power of attorney from Cole, and therefore no sufficient authority to act as Cole's agent in the sale of the property in controversy. But the difficulty in the case is not so much in regard to Shaw's authority to act for Cole, as in regard to Russell's knowledge, actual or constructive, of any infirmity in Shaw's title. The mortgage contained a power of sale. The sale was to be by auction. It was by auction, and the property was bid off by a third person. Holt acted as auctioneer for Cole. I am not aware that any law requires that an auctioneer, in making a sale of real estate by auction, must have authority in writing from the owner. Indeed, it is expressly held, in *Yourt* v. *Hopkins*, 24 Ill. 326, that a verbal authority authorizes an agent to act as auctioneer, and to sell lands, though not to make a deed of them. There was nothing, therefore, as a mattter

---

* CUSHING, C. J., having been of counsel, did not sit.

of law, to put Russell upon inquiry;—and, as a matter of fact, the jury have found that at the time he purchased he had no knowledge of the defect in the sale, or in Shaw's title, and had no notice of such facts as should have put him, as a reasonable man, upon inquiry. In *Very* v. *Russell*, decided in June, 1874, the court hold as follows in regard to Russell's title (FOSTER, J.): "Apparently, the acquisition of his grantor's title was regular. The record gave the defendant no intimation of a defect in the title, and afforded no intimation of a fraud practised by the mortgagee. The mortgage conferred a power of sale, and pointed out the *modus operandi* thereof. Ostensibly, the power was legally executed. The property was struck off to a third person at the auction. The mortgagee gave that person a quitclaim deed, which would have been (as it apparently was) sufficient to pass all the titles which the mortgagor had, if the sale by auction under the power had in fact been (as it apparently was) an effectual foreclosure of the mortgage."

3. The mortgage to Cole appeared to be dated October 29, 1863, and the acknowledgment of the mortgage appeared to be dated October 24, 1863. The defendant was permitted to show, by D. H. Woodward, who took the acknowledgment, that its date was erroneous, and that the mortgage was not acknowledged until after it was executed. It is claimed by the plaintiff that it was irregular to show by parol evidence the error in the date of the acknowledgment; that this could be done only by an amendment made by him, and under the direction of the court. It has been held that the date is no part of the substance of a deed, and may be contradicted. *Comings* v. *Wellman*, 14 N. H. 292; *Gibson* v. *Poor*, 21 N. H. 446, and authorities there cited.

Whether this doctrine can be applied to the acknowledgment of a deed, is a matter that need not be decided. In *Janvrin* v. *Fogg*, 49 N. H. 357, it is held that amendments, which are to be passed upon by the court, may be allowed after verdict, and judgment may then be rendered upon the verdict. *Howard* v. *Turner*, 6 Greenl. 106; *Buck* v. *Hardy*, 6 Greenl. 162; *Whittier* v. *Varney*, 10 N. H. 291; *Stevenson* v. *Mudgett*, 10 N. H. 343. This point, therefore, if well taken, would not cause the verdict to be set aside.

The fourth point made in the plaintiff's brief is not supported by the facts found in the printed case, and the fifth has been sufficiently examined.

*Exceptions overruled, and judgment on the verdict.*